UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHARLES DOTSON, JR.,

       Plaintiff,

v

CALVIN UNIVERSITY, READY FOR LIFE,
ABIGAIL SOBCZYNSKI, in her individual
and official capacity as Graduate Associate and
Resident Director and Coordinator of Ready
For Life with Calvin University, TONI FALK,
in her individual and official capacity as the
Program Director of the Ready for Life Academy
and Instructor with Calvin University, EMILY
PERTON, in her individual and official capacity
as Executive Director with Ready for Life and
Calvin University, LAUREN HORRAS, in her
individual and official capacity as Calvin
University Title IX Coordinator Director of Safer
Spaces, LUCAS TYRRELL, AMY TYRRELL,
and DAVID TYRRELL,

       Defendants.

Case No:

## COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, Charles, Jr., by and through his attorneys, Atnip & Associates, PLLC, and Heidi A. Tanner Attorney at Law, PLLC, and for his Complaint brought against Calvin University, Ready for Life, Abigail Sobczynski, Toni Falk, Emily Perton, Lauren Horras, Lucas Tyrell, Amy Tyrrell, and David Tyrrell states:

## INTRODUCTION

This is a claim wherein Charles Dotson Jr., while a male student with Down Syndrome at Calvin University in the Ready for Life Program during the 2022 to 2023 academic school year, was repeatedly sexually assaulted, harassed, battered, and subjected to violence by his assigned dorm mate Lucas Tyrrell.  When Charles Dotson, Jr. attempted to report the assaults, harassment, violence, and batteries to Lauren Horras, in her individual and official capacity as Calvin University Title IX Coordinator Director of Safer Spaces, Emily Perton, in her individual and official capacity as the Executive Director with Ready for Life and Calvin University, Toni Falk, in her individual and official capacity as the Program Director of the Ready for Life Program and Instructor at Calvin University, Abigail Sobczynski, in her individual and official capacity as a Graduate Associate and Resident Director and Coordinator of Ready For Life with Calvin University, as well as Calvin University,

2

Ready for Life, and their Title IX appointed staff, faculty designees, investigators, administrators, agents, representatives, and team, they failed to investigate the claims in a timely manner, coordinate specific actions to prevent sexual discrimination, ensure equal access to Calvin University's educational program and activities, ensure that Calvin University's Title IX policies and procedures and relevant State and Federal laws were followed, monitor Calvin University and Ready for Life's educational programs or activities for barriers to report information about conduct that may reasonably constitute sexual discrimination and taking steps reasonably calculated to address such barriers, ensure proper training, prevention, and educational efforts with a periodic review of Calvin University and Ready for Life's changes in climate and culture, especially in light of Charles Dotson, Jr.'s medically recognized cognitive disability.

As a result, Charles Dotson, Jr. suffered sexual battery and abuse, battery, and intentional infliction of emotional distress by Lucas Tyrrell, intentional infliction of emotional distress by Calvin University, Ready for Life, Abigail Sobczynski, Toni Falk, Emily Perton, Lauren Horras, Amy Tyrrell, and David Tyrrell, a violation of his Title IX, USC § 168, *et seq.*, rights by Calvin University, Ready for Life, Abigail Sobczynski, Toni Falk, Emily Perton, and Lauren Horras, a violation of his rights under the Elliott Larsen Civil Rights Act (ELCRA), MCL 37.2401 by Calvin University And Ready For Life, a violation of his Constitutional and Federal rights

under 42 U.S.C. § 1983 by Calvin University and Ready for Life, a violation of his

rights under the Americans With Disabilities Act Of 1990 (ADA); 42 U.S.C. §12101

by Calvin University and Ready For Life, as well as a violation of his rights under the

Rehabilitation Act §504 y b Calvin University and Ready For Life.

## **PARTIES**

1.      Plaintiff, Charles Dotson, Jr., (hereinafter referred to as "Charles, Jr.") is

an individual who was, at all times relevant, a resident of the City of Lathrup Village,

County of Oakland, State of Michigan.

2.      Defendant, Calvin University, a private university in Grand Rapids,

Michigan, conducts a regular and systematic part of its business in the City of Grand

Rapids, County of Kent, State of Michigan.

3.      Defendant, Ready for Life, is a domestic non-profit corporation in

partnership with Calvin University located in Grand Rapids, Michigan, conducts a

regular and systematic part of its business in the City of Grand Rapids, County of Kent,

State of Michigan.

4.      Defendant, Abigail Sobczynski, (hereinafter referred to as

"Sobczynski") is an individual who was, at all times relevant herein, was a resident of

the City of Grand Rapids, County of Kent, State of Michigan.

5.      Defendant, Toni Falk, (hereinafter referred to as "Falk"), is an individual

who was, at all times relevant herein, was a resident of the City of Grand Rapids,

County of Kent, State of Michigan.

6.      Defendant, Emily Perton, (hereinafter referred to as "Perton") is an individual who was, at all times relevant herein, a resident of the City of Grand Rapids, County of Kent, State of Michigan.

7.      Defendant, Lauren Horras, (hereinafter referred to as "Horras") is an individual who was, at all times relevant herein, a resident of the City of Grandville, County of Kent, State of Michigan.

8.      Defendant, Lucas Tyrrell, (hereinafter referred to as "Lucas") is an individual who was, at all relevant times herein, a resident of the Village of Beverly Hills, County of Oakland, State of Michigan.

9.      Defendant, Amy Tyrrell (hereinafter referred to as "Amy") an individual who was, at all times relevant herein, a resident of the Village of Beverly Hills, County of Oakland, State of Michigan.

10.     Defendant, David Tyrrell, (hereinafter referred to as "David") was, at all times relevant herein, a resident of the Village of Beverly Hills, County of Oakland, State of Michigan.

## JURISDICTION AND VENUE

11.     This action arises under Title IX, 20 U.S.C. § 1681, *et. seq.,* the Elliott Larsen Civil Rights Act (ELCRA), MCL 37.2401, 42 U.S.C. § 1983, Americans With

5

Disabilities Act of 1990 (ADA); 42 U.S.C. §12101, and the REHABILITATION ACT §504, as well as regulations and policies promulgated pursuant to law.

12.    This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §1331 and 1343.

13.    Declaratory and other relief is authorized pursuant to 28 U.S.C §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which is necessary and appropriate to determine the parties' respective rights and duties.

14.    Venue is proper in the United States District Court for the Western District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b), because Calvin University's campus and dorms, Ready for Life's program, and all matters herein arose in the City of Grand Rapids, County of Kent, State of Michigan, which are within this Court's jurisdiction.

## GENERAL ALLEGATIONS

15.    Plaintiff incorporates by reference paragraphs One through Fourteen, as if set forth fully herein.

16.    In the fall of 2022, Charles, Jr., was a resident of Calvin University through its Ready for Life Academy and resided in Boer-Bennink Hall upon the Calvin University campus.

17.    In the fall of 2022, Charles, Jr., and Lucas began to cohabit in a dorm

room located in Boer-Bennink Hall upon the Calvin University campus.

18.    At all relevant times, Charles, Jr., was a full-time student in good standing at Calvin University and was the recipient of the "Ruby's Rainbow Incredible Ivy Scholarship."

19.    At all relevant times, Lucas was a full-time student at Calvin University.

20.    At all times relevant, Charles, Jr., and Lucas were under the care, custody, control and supervision of Calvin University.

21.    At all times relevant, Charles, Jr., and Lucas were part of the Ready for Life Academy at Calvin University.

22.    At all times relevant, Calvin University and Ready for Life were in a partnership.

23.    The Ready for Life Academy is stated to provide an inclusive college experience at Calvin University for adults with intellectual disabilities, including, but not limited to, Down Syndrome.

24.    On or about November 20, 2022, to November 23, 2022, and within the above-said dorm room, Lucas sexually assaulted and/or penetrated Charles, Jr., without his consent. (This event will be identified hereinafter as the "November Assault")

25.    Just prior to the November Assault, Charles, Jr., removed his clothing in preparation to shower/bathe.

26.     While Charles, Jr., was in the process of entering the bathroom/shower, Lucas forcibly, intentionally, and without warning or consent, kissed Charles, Jr., on the lips and made contact with Charles, Jr.'s buttocks committing a sexual assault and battery.  (This event will be identified hereinafter as the "Shower Assault")

27.     On December 1, 2022, while Charles, Jr., was lying in his bed, nude, Lucas removed his clothing, entered Charles, Jr.'s bed, and penetrated him without consent, committing a sexual assault and battery.

28.      In response to Lucas' intentional, forcible, and non-consensual penetration of Charles, Jr., Charles, Jr., pushed Lucas out of the bed with a clear and audible rejection of "don't do that."

29.      After being pushed from Charles, Jr.'s bed, Lucas then attempted to kiss Charles, Jr., without his consent. (This event will be identified hereinafter as the "Dorm Assault")

30.      During the evening hours of December 1, 2022, Charles, Jr., reported the "Shower Assault" and/or the "Dorm Assault" to Zach Rozendal, Charles, Jr.'s Resident Advisor.

31.      Zach Rozendal subsequently informed Sobczynski, that Charles, Jr., reported the "Shower Assault" and/or the "Dorm Assault."

32.      On December 1, 2022, upon being asked by Sobczynski about the

alleged incident(s), Lucas informed Sobczynski that the "Dorm Assault" had in fact occurred.

33.    Lucas also reported to Sobczynski that Charles, Jr., never initiated these incidents, rather he (Lucas) initiated each incident, and Charles, Jr., had never indicated that he wanted them to happen.

34.    Lucas further advised Zach Rozendal and Sobczynski that these types of incidents had occurred approximately five times with Charles, Jr.

35.    Sobczynski had advised both Charles, Jr., and Lucas that Horras, Calvin University's Title IX Coordinator Director of Safer Spaces, would be reaching out to them individually via email to follow-up on the report she was submitting regarding the assaults.

36.    On December 1, 2022, Falk, the Academy Director and Instructor, met with Lucas and confirmed with Lucas the following facts:

      a.  Lucas attempted to kiss Charles, Jr.;

      b.  Lucas was unsure if Charles, Jr., wanted to be kissed;

      c.  The sexual encounters had occurred twice;

      d.  Lucas had touched Charles, Jr.'s genitals; and

      e.  Lucas did not have Charles, Jr.'s consent to touch him or be in bed with him.

37.    On December 2, 2022, Falk held a "Student Conference" with Charles,

Jr., in her official capacity with Ready for Life and Calvin University where he reported:

    a. Lucas would frequently enter the shower with him and "rough house;"

    b. Lucas had touched his genitals;

    c. Lucas had kissed him multiple times;

    d. Lucas would lay naked in Charles, Jr.'s bed while Charles, Jr., was showering and wait for him to return;

    e. Lucas was never invited to join Charles, Jr., in bed;

    f. Lucas had engaged in sexual advances, including fondling, while Charles, Jr., was in bed twice including an incident prior to the "Dorm Assault"; and

    g. Charles, Jr., communicated to Lucas that he did not want any sexual engagement with him.

38. Despite having been made aware of the above said facts by both Lucas and Charles' Jr., as well as Zach Rozendal the Resident Advisor, no medical care was subsequently offered or facilitated in the immediate moments or days thereafter.

39. Despite having been aware of the above said facts, there was no attempt to facilitate the collection of physical evidence in the immediate moments or days thereafter.

40. Despite being aware of the above said facts, Charles, Jr., was not provided an opportunity, guidance, or assistance in contacting the police or filing a

report.

41.    On December 2, 2022, Perton, Executive Director, held a meeting with Charles, Jr.

42.    During the above said meeting, Charles, Jr., informed Perton that he had asked Lucas to stop the assault(s), to which Lucas replied that he could not stop himself.

43.    Perton instructed Charles, Jr., that he needed to tell his parents about the sexual assaults.

44.    Soon thereafter, Perton initiated a phone call with Donna Dotson (Charles, Jr.'s mother) and Charles, Jr.

45.    Perton left the room and had Charles, Jr., converse with his mother Donna Dotson via telephone.

46.    Perton encouraged Charles, Jr., to tell Donna Dotson about an "Instagram Incident" and informed Donna Dotson that Lucas had attempted to kiss Charles, Jr.

47.    More specifically, the "Instagram Incident" involved Charles, Jr., being "cat fished" by an individual believed to be "Audrey." Audrey attempted to extort money from Charles, Jr., through an Instagram account on Charles, Jr.'s phone. Both Perton and Sobczynski were aware of the seriousness of the situation as well as Charles, Jr.'s vulnerability to exploitation.

48.    Perton re-entered the room while Donna Dotson was on the phone with

11

Charles, Jr., and joined in on the conversation.

49.    Perton assured Donna Dotson that safety measures were being taken and that privacy settings would be placed on Charles, Jr.'s phone.

50.    According to notes provided by Calvin University, Perton asked Donna Dotson if Charles, Jr., had told her about what had transpired between him and Lucas, to which she responded in the affirmative.

51.    Despite Donna Dotson's acknowledgement that something occurred between Charles, Jr., and Lucas, she was never informed that the incident far exceeded kissing, nor the severity of the situation. Specifically, Donna Dotson was never informed of the "Shower Assault" or the "Dorm Assault."

52.    At the close of the meeting, Charles, Jr., cried and told Perton that he was scared.

53.    Calvin University's communication to Donna Dotson framed the interaction between Charles, Jr., and Lucas as a sexual exploration and not as a sexual assault, battery, harassment, or violence.

54.    At no time did Perton discuss the details of the sexual assaults, battery, harassment, or violence with Donna Dotson, or inquire as to whether or not she had been provided the same by Charles, Jr., but rather glossed over the sexual assault facts by focusing her attention on the "Instagram" incident.

55.    Perton advised Donna Dotson that Lucas had been expelled, and due to

12

such expulsion Calvin University would not continue the "process," but failed/neglected to be specific in explaining that the "process" she was referring to was relative to the sexual assault investigation.

56.    Perton then suggested that Charles, Jr., go home for the weekend without further explanation.

57.    Donna Dotson had no reason not to believe that Calvin University or Ready for Life would fail to be forthright with the information that they had communicated at the time.

58.    On December 3, 2022, Horras, who had been fully advised of the sexual assaults, battery, harassment and violence was supposed to meet with Charles, Jr., to discuss the details of the sexual assaults, battery, harassment, and violence, but was absent every time Charles, Jr., attempted to meet her in her office.

59.    Kate Strater, Assistant Professor, Program Director, Life and Career Studies at Calvin University and Ready for Life who had been advised of the sexual assaults, battery, harassment, and violence, spoke with Horras directly, advising her of the Charles, Jr.'s attempts to meet with her in follow-up to his reports of the sexual assaults, battery, harassment, and violence.

60.    It was only after Kate Strater became involved that Horras met with Charles, Jr., at which time she asked questions based on the report she received.

61.    At no time did Horras take notes or record her meeting with Charles, Jr.

62.    Further, Mallory Dye, a teacher and counselor at Calvin University and Ready for Life advised Horras of the sexual assaults, battery, harassment and violence suffered by Charles, Jr., at the hands of Lucas.

62.    On December 3, 2022, Perton met with Amy (Lucas' mother) via telephone and discussed the details of the "Shower Assault" and "Dorm Assault," sexual assaults, battery, harassment, and violence committed by Lucas. Despite Calvin University's and Ready for Life's characterization of the "Shower Assault" and "Dorm Assault" as sexual exploration, upon information and belief, Perton shared with Amy (Lucas' mother) that Lucas admitted to the assaults, battery, harassment, and violence and that there was never consent on behalf of Charles, Jr.

63.    Subsequent to the December 3, 2022, meeting between Perton and Amy, Amy followed up with a text message to Perton instructing Perton that the record relative to the sexual assaults should exclude any reference to penetration.

64.    Within the above said text message, Amy stated that she did not believe that there was any non-consensual sexual contact because Charles, Jr., could have pushed Lucas off of his bed, and that when Charles, Jr., did, in fact, push Lucas off the bed, Lucas hurt his buttocks upon striking the ground.

65.    On December 3, 2022, Perton assured Amy via text message that the

14

record was absent of any reference to penetration, stating, "[y]es, I will make sure. My current record does not say penetration, but I will add additional notes."

66.     The foregoing recorded conversation between Perton and Amy is proof that Amy was informed of the specific details of the sexual assaults, to which she could respond and inquire.

67.     Perton, in her official capacity with Ready for Life and Calvin University, exercised disparate treatment towards Amy on behalf of Lucas vs Donna Dotson on behalf of Charles, Jr.

68.     Upon information and belief, Perton personally took notes that expressed personal knowledge of Charles, Jr., being penetrated by Lucas.

69.     Later on December 3, 2022, Amy again text messaged Perton, "I am not sure we protected LT enough in this situation." Amy was clearly referring to Lucas.

70.     By the end of the day, December 3, 2022, Donna Dotson picked up Charles, Jr., from Calvin University for the weekend. Prior to, and at this time, there was no attempt by any school official to provide Charles, Sr., or Donna Dotson with an accurate depiction of the facts or a timeline of sexual assaults, battery, harassment, or violence, nor the events that had transpired, despite the fact that both Lucas and Charles, Jr., had stated that the penetration was not consensual.

71.     When Donna Dotson appeared to pick Charles, Jr., up, she was advised

that Lucas and Charles, Jr., had been merely "horsing around" and that they became "too friendly."

72.    On December 5, 2022, Perton contacted Amy to discuss what was meant by "I am not sure we protected Lucas enough in this situation." Lucas' parents shared that even though Lucas said the incident was not consensual, he had not clearly communicated what he meant. He meant that he enjoyed it and didn't want it to stop but that it was consensual. They shared that they felt he had stopped when asked to because he had been pushed out of the bed by Charles, Jr., and shared that it hurt his butt.

73.    According to Calvin University documents, Lucas was subsequently expelled.

74.    Upon information and belief, Donna Dotson was advised in early December 2022 that Lucas had been expelled, and any further investigation into the interactions involving Lucas would be discontinued.

75.    During winter break, Charles, Jr., expressed to his parents that he did not want to return to Calvin University.

76.    Upon further inquiry Charles, Jr., discussed the "Instagram Incident" as well as the "Shower Assault" and "Dorm Assault" with his parents as well as his desire to make a police report against Lucas.

77.    It was during Winter break that Donna Dotson and Charles Dotson, Sr.,

first learned of the sexual assaults, battery, harassment, and violence.

78.    On January 8, 2023, Charles, Jr., contacted his parents stating, 'that he did not feel safe.'

79.    On January 12, 2023, Charles, Jr., advised his parents that on December 2, 2022, he had sought help from his teachers at Calvin University and Ready for Life after Lucas approached him while he was in the chapel when Lucas knew that they were not supposed to be talking.

80.    On January 12, 2023, Charles, Jr., advised his parents that he believed that Lucas had a key to their dorm room on December 1, 2022, even though he was supposed to switch rooms and stayed in the dorm that night.

81.    On January 13, 2023, Charles, Sr., and Donna Dotson called Perton to ask why a police report was never made.

82.    Upon information and belief, Perton expressed that it was because Charles, Jr., was never made aware of the option.

83.    Upon information and belief, Horras, who was the Calvin University Title IX Coordinator, stated that a report was not made because Perton likely did not do it.

84.    Upon information and belief, when Perton was asked why Lauren (Horras) would state the foregoing, she indicated it had to do with the fact that Charles,

Jr., was more independent than Lucas.

85.    As the Title IX Coordinator and Director of Safer Spaces Horras was responsible for overseeing and monitoring Calvin University and Ready for Life's overall compliance with Title IX, Title IX's regulations, and coordinate Calvin University and Ready for Life's efforts to comply with their obligations under same, including, but not limited to coordinating any investigations of complaints received pursuant to Title IX and the implementing regulations.

86.    Per Calvin University's Title IX training through Thompson Coburn LLP, Calvin University, Ready for Life, and Horras were obligated to respond to complaints of sexual harassment with or without a formal complaint when Calvin University, Ready for Life, and Horras had actual knowledge of the alleged sexual harassment, the alleged sexual harassment occurred in its educational program of activity of its school, and the alleged sexual harassment was against a person physically located in the United States.

87.    Horras, Calvin University, and Ready for Life under Title IX must respond "promptly" and "in a manner that it not deliberately indifferent" to allegations of sexual harassment.

88.    Pursuant to Title IX and the training materials Calvin University, Ready for Life and Horras were provided, Horras as the Title IX Coordinator "must contact the complainant to: discuss the availability of supportive measures; consider the

complainant's wishes with respect to supportive measures; inform the complainant of the availability of supportive measures with or without the filing of a formal complaint; and explain to the complainant the process for filing a formal complaint."

89.    Failure to satisfy the specific requirements of Paragraph 88 could be characterized as deliberate indifference.

90.    Horras as the Title IX Coordinator was responsible for coordinating the effective implementation of supportive measures.

91.    William Corner, Campus Safety Director, received the information for the preparation of a Clery Report from a Calvin University staff member named Lauren [Horras].

92.    In this report, William Corner categorized the assaults committed upon Charles, Jr., as merely fondling based upon information given to him by Calvin University staff members.

## COUNT I – SEXUAL BATTERY/ABUSE – LUCAS

93.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through Ninety-Two into this Count as if they were set forth at length herein.

94.    On or about November 20, 2022, to November 23, 2022, Lucas willfully, forcibly, intentionally, and without warning or consent, kissed Charles, Jr., on the lips and made contact with Charles, Jr.'s buttocks committing a sexual battery and assault.

19

95.     Based on Charles, Jr.'s words, actions, and conduct, it was known to Lucas, or should have been reasonably known by Lucas, that Charles, Jr., did not consent to nor did he want any physical or sexual contact to happen and/or continue.

96.     In Michigan, the legal term for "sexual assault" and "sexual battery" is Criminal Sexual Conduct.

97.     Sexual assault is any form of unwanted sexual contact obtained without consent and/or obtained through the use of force, threat of force, intimidation, or coercion pursuant to Michigan Penal Code Section 750.520, *et. seq*.

98.     3rd degree (felony) is sexual penetration and force or coercion.

99.     4th degree (misdemeanor) is sexual contact and force or coercion.

100.    Defendant Lucas committed criminal sexual conduct; *i.e.* "sexual assault" and "sexual battery" as defined in Michigan Penal Code Section 750.520, *et. seq*.

101.    The Criminal Sexual Conduct, sexual assault, and sexual battery described above directly and proximately caused Charles, Jr.'s injuries in that it directly, and in a natural and continuous sequence, produced, or contributed to such injuries.

102.    As a direct and proximate result of the foregoing, Charles, Jr., suffered and continues to suffer injuries for which he is entitled to be compensated, including, but

not limited to:

    a. Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

    b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. A marred educational record, impaired educational capacity, and future earning capacity;

    d. Attorneys' fees and costs; and

    e. Such other and further relief this Honorable Court deems just and proper.

103.    Said losses, injuries, and expenses are either permanent or continuing in nature and Charles, Jr., will continue to suffer same in the future.

## COUNT II – BATTERY – LUCAS

104.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through One Hundred and Three into this Count as if they were set forth at length herein.

105.    On December 1, 2022, Charles, Jr., and Lucas cohabited in a dorm room at Boer-Bennink Hall located on the Calvin University campus.

106.    On December 1, 2022, while Charles, Jr., was lying in his bed nude, Lucas removed his clothing, entered Charles, Jr.'s bed, and penetrated him without consent, committing a sexual battery and assault.

107.    On December 1, 2022, Charles, Jr., removed his clothing as he entered the shower. Simultaneously, Lucas pursued Charles, Jr., entering the shower behind

21

him.

108.    While in the shower, Lucas forcibly kissed Charles, Jr., on the lips willfully and intentionally without warning or consent.

109.    While in the shower, Lucas forcefully made contact with Charles, Jr., on the buttocks without warning or consent.

110.    Lucas physically overcame Charles, Jr., and penetrated him willfully and intentionally.

111.    Charles, Jr., never consented to any physical contact or sexual advancements made by Lucas. The physical contact was conducted by Lucas, willfully and intentionally, and without consent.

112.    Lucas physically forced himself on top of Charles, Jr., after which time Charles, Jr., pushed Lucas off him and the bed.

113.    In Michigan, the legal term for "sexual assault" and "sexual battery" is Criminal Sexual Conduct.

114.    Sexual assault is any form of unwanted sexual contact obtained without consent and/or obtained through the use of force, threat of force, intimidation, or coercion pursuant to Michigan Penal Code Section 750.520, *et. seq.*

115.    3rd degree (felony) is sexual penetration and force or coercion.

116.    4th degree (misdemeanor) is sexual contact and force or coercion.

117.    On multiple occasions, Charles Jr., stated that he did not consent to, nor did he want, any physical or sexual contact to happen and/or continue.

118.    During a previous occasion that occurred on or about November 20, 2022, to November 23, 2022, and prior to Calvin University's and Ready for Life's Thanksgiving break, Charles, Jr., was sexually contacted by Lucas.

119.    It is based upon information and belief that Lucas forcibly and without consent penetrated Charles, Jr.

120.    Charles, Jr., had stated that he did not consent to nor want any physical or sexual contact to happen and/or continue.

121.    Defendant Lucas committed criminal sexual conduct; i.e. "sexual assault" and "sexual battery" as defined in Michigan Penal Code Section 750.520, *et. seq.*

122.    The Criminal Sexual Conduct, sexual assault, and sexual battery described above directly and proximately caused Charles, Jr.'s injuries in that it directly, and in a natural and continuous sequence, produced, or contributed to such injuries.

123.    As a direct and proximate result of Lucas's criminal sexual conduct, Charles, Jr., suffered and continues to suffer severe injuries, injuries for which he is entitled to be compensated, including, but not limited to:

a. Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. A marred educational record, impaired educational capacity, and future earning capacity;

d. Attorneys' fees and costs; and

e. Such other and further relief this Honorable Court deems just and proper.

## <u>COUNT III – INTRUSION INTO SECLUSION</u>

124.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through One Hundred and Twenty-Three as if they were set forth in this Count at length herein.

125.    Charles, Jr. maintained privacy concerning his personal bed within the dorm he cohabited with Lucas.

126.    Charles, Jr. never invited Lucas into the personal space of his bed at any time in which he cohabited with Lucas in their assigned dorm.

127.    Charles, Jr. had a right to keep his bed and personal space private.

128.    Lucas invaded Charles, Jr.'s privacy by entering into and laying in Charles, Jr.'s bed naked while Charles, Jr. was utilizing the shower, refusing to get out of the bed when Charles, Jr. discovered him in his bed, refusing to listen to Charles, Jr.'s rejection of his forced sexual assault and battery, penetrating Charles, Jr. without

consent, and refusing to listen to Charles, Jr.'s many requests to be left alone, while Charles, Jr. was Lucas' dorm mate at Calvin University while in the Ready for Life Program.

129.    Lucas' conduct and behavior was objectionable and would be objectionable to a reasonable person.

130.    Lucas' conduct as outlined above was objectionable, extreme, outrageous, and beyond all possible bounds of decency, and of such character as to be intolerable in civilized society.

131.    Lucas' conduct was not for any proper purpose, nor was it within the scope of his authority or otherwise immune or privileged.

132.    Lucas' conduct against Charles, Jr. deliberately and intentionally injured Charles, Jr.

133.    As a direct and proximate result of Lucas' conduct of intrusion into seclusion, Charles, Jr., suffered and continues to suffer severe injuries, injuries for which he is entitled to be compensated, including, but not limited to:

> a. Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;
>
> b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;
>
> c. A marred educational record, impaired educational capacity, and future earning capacity;

d.  Attorneys' fees and costs; and

e.  Such other and further relief this Honorable Court deems just and proper.

## COUNT IIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – LUCAS

134.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through One Hundred and Thirty-Three as if they were set forth in this Count at length herein.

135.    December 1, 2022, Charles, Jr., and Lucas cohabited in a dorm room at Calvin University while enrolled in the Ready for Life Academy.

136.    Upon undressing for a shower, Charles, Jr., was pursued by Lucas as he attempted to enter the shower.

137.    Lucas kissed Charles, Jr., on the lips willfully, intentionally, and without warning or consent.

138.    Lucas forcefully contacted Charles, Jr., on the buttocks without warning or consent.

139.    Lucas physically overcame Charles, Jr., and penetrated him willfully, intentionally, and without consent.

140.    Charles, Jr., never consented to any physical contact or advancements made by Lucas. The physical contact was conducted by Lucas, willfully and intentionally.

141.    Lucas physically forced himself on top of Charles, Jr., after which time Charles, Jr., pushed Lucas off him and the bed.

142.    Charles, Jr., on multiple occasions, stated that he did not consent to, nor want any, physical or sexual contact to happen and/or continue.

143.    As a result of the non-consensual kissing, non-consensual contact of the buttocks, and non-consensual penetration, Charles, Jr., suffered mental anguish as a direct result.

144.    The mental anguish suffered by Charles, Jr., at the hands of Lucas resulted in actual physical harm.

145.    As described in the incorporated paragraphs, Lucas' conduct of assaulting, battering, harassing, and sexually assaulting Charles, Jr., was intentional and reckless, and Lucas knew or should have known that emotional distress would likely result.

146.    The conduct described in the incorporated paragraphs was and is outrageous; that is, it goes beyond all bounds of decency, and is and ought to be regarded as odious and utterly intolerable in a civilized community.

147.    The conduct described above directly and indirectly caused Charles, Jr.'s injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

148.    "Michigan courts have recognized that the common-law tort of intentional infliction of emotional distress vindicates a person's right to be free from serious, intentional and unprivileged invasions of mental and emotional tranquility." Cotton v. Banks, 310 Mich. App. 129; 872 N.W.2d 1 (2015).

149.    "To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." Lucas v. Awaad, 299 Mich. App. 345, 359; 830 N.W.2d 141 (2013).

150.    "The test to determine whether a person's conduct was extreme or outrageous is whether recitation of the facts of the case to an average member of society would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" Lewis v. LeGraw, 258 Mich. App. 175, 196; 670 N.W.2d 675 (2003).

151.    As a direct and proximate result of Lucas' criminal sexual conduct, Charles, Jr., suffered and continues to suffer severe injuries, injuries for which he is entitled to be compensated, including, but not limited to:

a.  Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.  A marred educational record, impaired educational capacity, and future earning capacity;

d.  Attorneys' fees and costs; and

e.  Such other and further relief this Honorable Court deems just and proper.

## COUNT V-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – CALVIN UNIVERSITY, READY FOR LIFE, SOBCZYNSKI, FALK PERTON, AND HORRAS

152.    Plaintiff repeats, incorporates, and re-alleges paragraphs-One through One Hundred and Fifty-One as if they were set forth in this Count at length herein.

153.   The acts described herein constitute outrageous and reckless conduct against Charles, Jr.

154.   Defendants Calvin University and Ready for Life intended to cause Charles, Jr., to suffer emotional distress, or in the alternative, Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, their agents, employees, representatives, and/or administrators, engaged in the conduct with reckless disregard for the high probability of causing Charles, Jr., to suffer emotional distress.

29

155.    Charles, Jr., suffered, and continues to suffer, severe emotional distress and the outrageous conduct by Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, their agents, employees, representatives, and/or administrators in disregarding his reports of sexual harassment, assault, and battery by Lucas.

156.    Charles, Jr., suffered, and continues to suffer, severe emotional distress and the outrageous conduct by Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, their agents, employees, representatives, and/or administrators due to their failure to provide Charles, Sr., or Donna Dotson with an accurate depiction of the facts or a timeline of sexual assaults and events that had transpired, despite the fact that both Lucas and Charles, Jr., had stated that there was non-consensual penetration.

157.    Charles, Jr., suffered, and continues to suffer, severe emotional distress and the outrageous conduct by Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, their agents, employees, representatives, and/or administrators due to their active and willful advisement to Donna Dotson that Lucas and Charles, Jr., had been merely "horsing around" and that they became "too friendly."

158.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, their agents, employees, representatives, and/or administrators' disparate treatment of Charles, Jr., versus Lucas and their respective parents,

is outrageous and shocking to the conscious, thus constituting intentional infliction of emotional distress that is actionable under the laws of the State of Michigan.

159.  Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, <u>Horras</u>, their agents, employees, representatives, and/or administrators' outrageous conduct constitutes intentional infliction of emotional distress and is actionable under the laws of the State of Michigan.

160.  As a direct and proximate result of Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, their agents, employees, representatives, and/or administrators' intentional infliction of emotional distress, Charles, Jr., suffered, and continues to suffer, severe injuries, injuries for which he is entitled to be compensated, including, but not limited to:

      a.  Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

      b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.  A marred educational record, impaired educational capacity, and future earning capacity;

      d.  Attorneys' fees and costs; and

      e.  Such other and further relief this Honorable Court deems just and proper.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AMY TYRRELL AND DAVID TYRRELL

161.    Plaintiff repeats, incorporates, and re-alleges paragraphs-One through One Hundred and Sixty as if they were set forth in this Count at length herein.

162.    On December 3, 2022, Perton met with Amy (Lucas' mother) via telephone and discussed the details of the "Shower Assault" and "Dorm Assault," sexual assaults committed by Lucas.

163.    Despite Calvin University and Ready for Life's characterization of the "Shower Assault" and "Dorm Assault" as sexual exploration, upon information and belief, Perton advised Amy that Lucas had, in fact, admitted to the assaults and there was never consent on behalf of Charles, Jr.

164.    Subsequent to the December 3, 2022, meeting between Perton and Amy, Amy followed same with a text message to Perton instructing her that the record relative to the sexual assault should exclude any reference to penetration.

165.    Amy opined that she did not believe that there was any non-consensual sexual contact because Charles, Jr., could have pushed Lucas off of his bed and when Charles, Jr., did in fact push Lucas off the bed, Lucas hurt his buttocks upon striking the ground.

166.    On December 3, 2022, Perton assured Amy via text message, that the record was absent of any reference to the penetration, stating, "Yes, I will make sure.

My current record does not say penetration, but I will add additional notes."

167.    The foregoing recorded conversation between Perton and Amy is proof that Amy was informed of the specific details of the sexual assaults, to which she could respond and inquire.

168.    Perton, in her official capacity with Calvin University and Ready for Life, exercised disparate treatment to Amy on behalf of Lucas vs Donna Dotson on behalf of Charles, Jr.

169.    Upon information and belief, Perton personally took notes that expressed her personal knowledge of Charles, Jr., being penetrated by Lucas.

170.    Later, on December 3, 2022, Amy again text messaged Perton stating, "I am not sure we protected LT enough in this situation." Amy was clearly referring to Lucas.

171.    On December 5, 2022, Perton contacted Amy to discuss what she meant by "I am not sure we protected Lucas enough in this situation." Lucas' parents shared that even though Lucas said the incident was not consensual, he had not clearly communicated, and that was not what he meant. Lucas' parents' interpretation was, Lucas was trying to say that he enjoyed it and didn't want it to stop and that it was consensual. Lucas' parent believed Lucas stopped because he had been pushed out of the bed by Charles, Jr., and shared that it hurt his butt.

172.    The acts described herein constitute outrageous and reckless conduct

against Charles, Jr.

173.   Defendants Amy and David intended to cause Charles, Jr., to suffer emotional distress, or in the alternative, Amy and David engaged in the conduct with reckless disregard of the high probability of causing Charles, Jr., to suffer emotional distress.

174.   Charles, Jr., suffered, and continues to suffer, severe emotional distress and the outrageous conduct by Amy and David in disregarding his reports of sexual harassment, assault, and battery by Lucas.

175.   Charles, Jr., suffered, and continues to suffer, severe emotional distress and the outrageous conduct by Amy and David due to their active involvement in trying to and concealing the accurate depiction of the facts relative to the sexual assaults and events that had transpired, despite the fact that both Lucas and Charles, Jr., had stated that there was non-consensual penetration.

176.   Defendants Amy and David's active and willful concealment of the facts as outlined above, and their recruitment of Calvin University, Ready for Life, and Perton in same, is outrageous and shocking to the conscious, thus constituting intentional infliction of emotional distress that is actionable under the laws of the State of Michigan.

177.  Defendants Amy and David's outrageous conduct constitutes intentional infliction of emotional distress and is actionable under the laws of the

34

State of Michigan.

178.    As a direct and proximate result of Defendants Amy and David's intentional infliction of emotional distress, Charles, Jr., suffered, and continues to suffer, severe injuries, injuries for which he is entitled to be compensated, including, but not limited to:

   a.   Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

   b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c.   A marred educational record, impaired educational capacity, and future earning capacity;

   d.   Attorneys' fees and costs; and

   e.   Such other and further relief this Honorable Court deems just and proper.

## COUNT VII – TITLE IX, 20 U.S.C. § 1681, *et. seq.* – CALVINUNIVERSITY, READY FOR LIFE, SOBCZYNSKI, FALK, PERTON, and HORRAS

179.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through One Hundred and Seventy-Eight in this Count as if they were set forth at length herein.

180.    As of November 20, 2022, through November 23, 2022, Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras had actual knowledge of Lucas' sexual harassment, assault, battery, and violence against

35

Charles, Jr.

181.    Charles, Jr., suffered student-against-student sexual assault, battery, harassment, and violence which is deemed sexual discrimination prohibited by Title IX.

182.    Calvin University had actual notice of the specific and unique vulnerabilities of Charles, Jr.

183.    Ready for Life had actual notice of the specific and unique vulnerabilities of Charles, Jr.

184.    The Calvin University and Ready for Life staff members had sufficient authority to take appropriate corrective action to prevent Charles, Jr.'s injuries.

185.    Defendants, Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras had actual knowledge of the hostile educational environment Charles, Jr., continued to suffer after his reporting the sexual assaults, battery, harassment, violence, and discrimination.

186.    On multiple occasions, Charles Jr., was placed in situations by Calvin University, Ready for Life, and their employees, administrators, agents and representatives, that exemplified deliberate indifference to the harm that would be inflicted upon Charles Jr.

187.    Defendants, Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras with actual knowledge of Charles, Jr.'s many reports, had the

authority and ability to investigate and take meaningful, corrective action to remediate the sexual harassment and the hostile educational environment Charles, Jr., suffered, but actively and voluntarily failed to do so.

188.    Defendants, Calvin University, Ready for Life, Sobczynski, Falk, Perton and Horras' multiple failures to take meaningful disciplinary or corrective action against Lucas, and subjecting Charles, Jr., to additional sexual harassment, sexual assault, and a hostile educational environment after by Lucas, were clearly unreasonable in light of the known circumstances.

189.    While being fully aware of Charles Jr.'s vulnerabilities and the foreseeable risk of harm to Charles, Jr., in the absence of proper supervision, Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras exhibited a deliberate indifference toward ensuring the protection of Charles, Jr.

190.    Through their actions and inactions, Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras were deliberately indifferent to the sexual assaults, battery, harassment, and continued harassment of Charles, Jr., while at Calvin University, proximately causing severe injuries to Charles, Jr.

191.    The callous indifference on the part of Calvin University and Ready for Life directly exposed Charles, Jr., to acts of assault, battery, harassment, and violence.

192.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras possessed knowledge of the potential consequences of their actions and

inactions, failed to take reasonable measures to safeguard Charles Jr., thereby contributing to the occurrence of the assaultive and harassing conduct.

193.  Through their actions and inactions, Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras created an environment wherein sexual assaults, battery, violence, and harassment against Charles, Jr., was tolerated, thus encouraging the continuation of same by Lucas against Charles, Jr., and proximately causing severe injuries to Charles, Jr.

194.  Through their actions and inactions, Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras created an environment wherein sexual assaults, battery, violence, and harassment against Charles, Jr., was tolerated and ignored when they failed to follow Title IX, their own Title IX training materials posted on their website for reference, and Calvin University and Ready for Life's sexual misconduct policy, proximately causing severe injuries to Charles, Jr.

195.  The severity of the offensive conduct altered the educational environment, depriving Charles, Jr., of access to a safe and effective educational environment.

196.  The aforementioned sexual assaults, battery, violence, and harassing conduct Lucas inflicted upon Charles, Jr., was severe, pervasive, and objectively offensive, and effectively barred Charles, Jr., access to educational opportunities and benefits.

197.   By their actions and inactions, Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras acted with deliberate indifference toward the rights of Charles, Jr., to a safe and secure education environment, thus materially impairing his ability to pursue his education at Calvin University in violation of the requirements of Title IX.

198.   Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members failed to fulfill their duties to Charles, Jr., under Title IX and Calvin University and Ready for Life's sexual misconduct policy.

199.   Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras and other school staff did not carry out their duties as they had in the past. Alternatively, they sought to conceal and/or downplay these incidents by categorizing them as fondling and/or exploration.

200.   Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members violated Title IX by choosing to take sides against Charles, Jr., while supporting Lucas through the disciplinary process;

201.   Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members violated Title IX by ignoring complaints and reports regarding Lucas' sexual assaults, battery, harassment, and violence against Charles, Jr., or being deliberately indifferent thereto;

202.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members violated Title IX by failing to conduct an unbiased investigation into Charles, Jr.'s reports of Lucas' sexual assaults, battery, harassment, and violence, and being deliberating indifferent thereto;

203.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members violated Title IX by protecting and advocating for Lucas, despite Charles, Jr.'s credible and consistent reports of sexual assault, battery, harassment, and violence against him.

204.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members violated Title IX by creating a climate that tolerated sexual assault, battery, harassment, and violence against Charles, Jr., or being deliberately indifferent thereto;

205.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members violated Title IX by failing to develop or adopt policies and procedures to properly address complaints of student-against-student sexual assault, harassment, battery, violence, and post-sexual harassment;

206.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and other staff members violated Title IX by failing to develop or adopt policies and procedures regarding proper investigation of reports of student-against-student sexual assault, battery, harassment, and violence;

40

207.    Defendants Calvin University and Ready for Life, violated Title IX by failing to provide policies, procedures and training for their administrators, employees, students, and students' parents about sexual assault, battery, violence, and harassment;

208.    Defendants Calvin University and Ready for Life violated Title IX by failing to discipline their employees and agents identified herein, for their willful disregard to Charles, Jr.'s safety and rights, or being deliberately indifferent thereto;

209.    Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras and other staff members violated Title IX by failing to provide, offer, recommend, or coordinate adequate health and psychological, counseling, and academic assistance and services to Charles, Jr., after he was sexually assaulted, battered, harassed, and violated by Lucas, or being deliberately indifferent, thereto; and through other actions, inaction, and deliberate indifference.

210.    As a direct and proximate result of Defendants Calvin University, Ready for Life, Sobczynski, Falk, Perton, and Horras' conduct, action, inaction, and deliberate indifference, Charles, Jr., sustained, and continues to sustain, injuries for which he is entitled to be compensated, including, but not limited to:

      a.  Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

      b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. A marred educational record, impaired educational capacity, and future earning capacity;

d. Attorneys' fees and costs; and

e. Such other and further relief this Honorable Court deems just and proper.

## COUNT VIII – ELLIOTT LARSEN CIVIL RIGHTS ACT (ELCRA), MCL 37.2401 – CALVIN UNIVERSITY and READY FOR LIFE

211.     Plaintiff repeats, incorporates, and re-alleges paragraphs One through Two Hundred and Ten as if they were set forth in this Count at length herein.

212.     Under MCL 37.2401, an "'education institution'" means a public or private institution…and includes an academy, college, …university,…and includes an agent of an educational institution."

213.     Calvin University is a local university and the sexual assaults, harassment, battery, and violence occurred in the Boer-Bennink Hall, the dorm Charles, Jr., was assigned to cohabit with Lucas.  Therefore, Calvin University is an educational institution pursuant to MCL 37.2401.

214.     Ready for Life is an academy and the partner of Calvin University and the sexual assaults, harassment, battery, and violence occurred in the Boer-Bennink Hall, the dorm Charles, Jr., was assigned to cohabit with Lucas.  Therefore, Ready for Life is an educational institution pursuant to MCL 37.2401.

215.    Pursuant to MCL 37.2402(a), an educational institution shall not discriminate against "an individual" in the "full utilization of or the benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex."

216.    Sexual harassment includes "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature…" MCL 37.2103(k).

217.    Sexual harassment includes "conduct or communication [that] has the purpose or effect of substantially interfering with an individual's …education… or creating an intimidating, hostile, or offensive…educational…environment." MCL 37.2103(k)(iii).

218.    At all times relevant, Charles, Jr., and Lucas were under the control and supervision of Calvin University and Ready for Life.

219.    Charles, Jr., was subject to offensive conduct so severe that it altered the educational environment, depriving Charles, Jr., of access to a safe and effective educational environment.

220.    The above-mentioned assaultive and harassing conduct resulted in the loss of educational opportunities for Charles, Jr.

221.    Under ELCRA Charles, Jr., 1) belonged to a protected group; 2) Charles, Jr., was subjected to communication or conduct on the basis of sex; 3)

43

Charles, Jr., was subjected to unwelcome conduct or communication; 4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with Charles, Jr.'s education or created an intimidating, hostile, or offensive educational environment; and 5) the educational institution knew or should have known of the hostile environment and failed to take prompt and adequate remedial action.

222.   As a direct and proximate result of Calvin University and Ready for Life's conduct, Charles, Jr., suffered severe injuries and a deprivation of educational opportunities.

223.   As a direct and proximate result of Defendants Calvin University and Ready for Life's conduct, action, inaction, and deliberate indifference, Charles, Jr., sustained, and continues to sustain injuries for which he is entitled to be compensated, including, but not limited to:

     a. Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

     b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c. A marred educational record, impaired educational capacity, and future earning capacity;

     d. Attorneys' fees and costs; and

     e. Such other and further relief this Honorable Court deems just and proper.

**COUNT IX – CALVIN UNIVERSITY AND READY FOR LIFE'S NEGLIGENT TRAINING AND SUPERVISION IN VIOLATION OF CHARLES, JR.'S CONSTITUTIONAL AND FEDERAL RIGHTS, PURSUANT TO 42 U.S.C. § 1983**

224.     Plaintiff repeats, incorporates, and re-alleges paragraphs One through Two Hundred and Twenty-Three into this Count as if they were set forth at length herein.

225.     Sexual harassment is a form of unlawful sexual discrimination that can violate the Equal Protection Clause of the 14th Amendment to the United States Constitution.  Charles, Jr.'s Equal Protection Rights were violated when he suffered sexual harassment, sexual assault, battery, harassment, violence, and discrimination at Calvin University and Ready for Life.

226.     Charles, Jr., had federal civil rights secured by federal statute, Title IX of the Education Amendments of 1972, which provides in pertinent part:

> [N]o person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

227.     Title IX was intended to benefit students like Charles, Jr.

228.     Title IX provides students like Charles, Jr., clear civil rights which are not amorphous or vague, to be free from known sexual discrimination as school.

229.     Title IX imposes a binding mandatory obligation on federal funding recipients like Calvin University and Ready for Life, prohibiting it from discriminating

45

against students on the basis of sex.

230.  The U.S. Supreme Court in Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255-58 (2009) stated, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held that a Plaintiff may bring causes of action under both Title IX and §1983 for unlawful sex discrimination. Accordingly, a remedy for sex discrimination in schools is not foreclosed under §1983.

231.  At all times relevant hereto, Calvin University and Ready for Life were policy makers and administrators having duties to train, and failed to properly or sufficiently train its administrators, staff, students, and parents about sexual discrimination and sexual harassment and sexual assault against students; Title IX and/or student-against-student sexual misconduct; identifying, investigating, reporting, and remedying the effects of sexual harassment by students like Lucas against students like Charles, Jr.; or properly responding to and remediating continued harassment and sexual assault by students like Lucas who continued to harass Charles, Jr., after reporting the sexual assault.

232.  Calvin University and Ready for Life, through their negligence and/or wanton conduct, failed to fulfill their duty to appropriately supervise, monitor, train, regulate, instruct, manage, oversee, and guide Defendants Sobczynski, Falk, Perton, Horras, their teachers, employees, agents, associates, and/or staff members.

233.    Calvin University and Ready for Life's failure to properly train and/or supervise Defendants Sobczynski, Falk, Perton, Horras, employees, agents, associates, staff, teachers, and/or contractors contributed to the severe injuries suffered by Charles, Jr.

234.    Calvin University and Ready for Life failed to train, Sobczynski, Falk, Perton, Horras, its administrators, staff, students and parents despite the plainly obvious need for training on, among other things, student-against-student sexual misconduct and identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment.

235.    In a March 10, 2023 email written by Horras, she admitted that conversations regarding the disjointed nature of Campus Security, Safer Spaces and Ready for Life relative to Title IX investigations and this case in particular had just begun.

236.    The March 10, 2023 email, written by Horras, was in her official capacity as Calvin University Title IX Coordinator Director of Safer Spaces.

237.    In the March 10, 2023 email written by Horras, she continues to state that she is disappointed and frustrated with the Title IX process, the frustration that the process unnecessarily caused to the families (the Dotsons and Tyrrells), and that she is new to the role as Coordinator.

238.    In a March 16, 2023 email written by Horras, she admitted that after

having met with two Ready for Life staff members on December 2, 2022 wherein she was advised of the assaults suffered by Charles, Jr., she halted her involvement in the investigation process due to the fact that dismissing Lucas from the program was not discussed.

239.    In a March 20, 2023 email written by Horras, she admitted that due to her failure to personally conduct the interviews of Charles, Jr., and Lucas it was complicated to discover what information existed relative to the allegations brought by Charles, Jr.

240.    Horras never reached out to Charles, Jr., to offer any assistance as required under Title IX.

241.    Horras furthered the injuries to Charles, Jr., by providing incorrect information to Bill Corner, Campus Safety Director, with which to execute the Clery Report, despite having successfully and legally complying with the Title IX guidelines on two other sexual assault cases filed in 2022.

242.    Charles, Jr., maintains that these injuries were a foreseeable and preventable result of Calvin University and Ready for Life's breach of duty.

243.    As a direct and proximate result of Calvin University and Ready for Life's negligence in training and supervision, Charles, Jr., suffered severe injuries.

244.    Numerous authorities, including the United States Supreme Court and United States Department of Education, made clear and gave notice to Defendants

Calvin University and Ready for Life that school employees will confront student sexual harassment and abuse with regularity, given the high predictability, recurrence, and prevalence of student-against-student sexual assault and abuse in schools. Therefore, it was foreseen and inevitable that Defendant Calvin University and Ready for Life's administrators and employees, specifically Sobczynski, Falk, Perton, and Horras would encounter recurrent situations involving sexual assault that implicated students', and in this case, Charles, Jr.'s Constitutional and federal rights, and in fact, encounter those recurring situations.

245.    Calvin University and Ready for Life failed to adequately train its administrators, staff, students, and parents, specifically Sobczynski, Falk, Perton, Horras, Lucas, Amy, David, Donna Dotson, and Charles Dotson, Sr., and thereby prohibit and discourage foreseen conduct and retaliation, despite the clearly established and well-known dangers of sexual harassment, assault, violence, and battery encountered by students in U.S. public schools, and thereby was deliberately indifferent.

246.    Calvin University and Ready for Life's failure to train its administrators, staff, students, and parents, specifically Sobczynski, Falk, Perton, Horras, Lucas, Amy, David, Donna Dotson, and Charles Dotson, Sr., effectively denied Charles, Jr., of his clearly established Constitutional and federal rights.

247.    Calvin University and Ready for Life's failure to train its administrators,

staff, students, and parents, specifically Sobczynski, Falk, Perton, Horras, Lucas, Amy, David, Donna Dotson, and Charles Dotson, Sr., was deliberate, reckless, and in callous indifference to Charles, Jr.'s federal rights.

248.    As a direct and proximate result of Calvin University and Ready for Life's actions, inaction, deliberate indifference to, and violation of Charles, Jr.'s clearly established Constitutional and federal rights, Charles, Jr., suffered, and continues to suffer, injuries for which he is entitled to be compensated, including, but not limited to:

   a.  Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

   b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c.  A marred educational record, impaired educational capacity, and future earning capacity;

   d.  Attorneys' fees and costs; and

   e.  Such other and further relief this Honorable Court deems just and proper.

## COUNT X – NEGLIGENT HIRING AND RETENTION – CALVIN UNIVERSITY AND READY FOR LIFE

249.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through Two Hundred and Forty-Eight into this Count as if they were set forth at length herein.

250.    The State of Michigan recognizes a tort theory of negligent hiring or retention of employees.  Nesbary v. Gerber Products Co., 956 F.2d 1164, 1992WL

42350, * at 2 (6th Cir. Mar. 3, 1992).

251.    "[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." Zsigo v. Hurley Med. Ctr., 475 Mich. 215, 716 N.W.2d 220, 232 n.6 (2006).

252.    Calvin University and Ready for Life were negligent and/or wanton in failing to properly, adequately, and/or reasonably hire, supervise, monitor, regulate, instruct, oversee, and/or otherwise guide Ready for Life teachers, employees, agents, associates, and/or staff members, *i.e.* Sobczynski, Falk, Perton and Horras.

253.    Calvin University and Ready for Life's failure to properly hire and/or retain employees, and/or contractors, contributed to the sexual assaults, battery, harassment, violence, and severe injuries suffered by Charles, Jr.

254.    Charles, Jr., maintains that these injuries were a foreseeable and preventable result of Calvin University and Ready for Life's breach of duty.

255.    As a direct and proximate result of Calvin University and Ready for Life's negligent hiring and retention of employees and wanton conduct, Charles, Jr., suffered, and continues to suffer, injuries for which he is entitled to be compensated, including, but not limited to:

> a.  Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. A marred educational record, impaired educational capacity, and future earning capacity;

d. Attorneys' fees and costs; and

e. Such other and further relief this Honorable Court deems just and proper.

## COUNT XI – VICARIOUS LIABILITY/RESPONDEAT SUPERIOR – CALVIN UNIVERSITY AND READY TO LIFE

256.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through Two Hundred and Fifty-Five into this Count as if they were set forth at length herein.

257.    Under Michigan law, an employer's vicarious liability under the doctrine of respondeat superior is as follows: "[A] master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment" but is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control."  McMullen v. Duddles, F.Supp.2d 826, 830 (W.D. Mich. 2005).

258.   "Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business."  Hamed v. Wayne Co., 490 Mich. 1, 10-11; 803 N.W.2d 237 (2011).

52

259.   In general, acts done with the expressed or implied authority of the master are within the scope of employment of the servant.

260.   Calvin University and Ready for Life were the employers of Sobczynski, Falk Perton, and Horras as well as other administrators, staff, teachers, etcetera, on or about November 20, 2022, through January of 2023.

261.   Calvin University and Ready for Life provided Sobczynski, Falk, Perton, and Horras, as well as other administrators, staff, teachers, etcetera with their expressed or implied authority during the actions, inactions, exercise of deliberate indifference towards Charles, Jr., and the violation and deprivation of federal and state rights and protections.

262.   Throughout the initial disclosure of the sexual assaults, battery, harassment, and violence on or about November 20, 2022, to November 23, 2022, through January 2023, Calvin University and Ready for Life knew or should have known that its employees, agents, representatives, administrators, teachers, etcetera, including, but not limited to Sobczynski, Falk, Perton, and Horras would fail to properly follow its guidelines and protocols relative to the same.

263.   Charles, Jr., maintains that these injuries were a foreseeable and preventable result of Calvin University and Ready for Life's breach of duty.

264.   As a direct and proximate result of Calvin University and Ready for Life's negligent hiring and retention of employees and wanton conduct, Charles, Jr.,

suffered, and continues to suffer, injuries for which he is entitled to be compensated, including, but not limited to:

    a. Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

    b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. A marred educational record, impaired educational capacity, and future earning capacity;

    d. Attorneys' fees and costs; and

    e. Such other and further relief this Honorable Court deems just and proper.

## COUNT XII – PREMISES LIABILITY & SPECIAL RELATIONSHIP – CALVIN UNIVERSITY AND READY FOR LIFE

265.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through Two Hundred and Sixty-Four as if they were set forth at length herein.

266.    On or about December 1, 2022, Charles, Jr., was a student at Calvin University through the Ready for Life Academy.

267.    On or about December 1, 2022, Plaintiff Charles, Jr., was an invitee at Calvin University, whose address is 3201 Burton St SE, Grand Rapids, MI 49546.

268.    Calvin University and Ready for Life's "desire to foster a commercial advantage by inviting persons to visit the premises," it is this "prospect of pecuniary gain" that "justifies imposition" for "the higher duty of care owed to invitees." Stitt

v. Holland Abundant Life Fellowship, 462 Mich. 591, 604; 614 N.W.2d 88 (2000).

269.   At all relevant times, including on or about December 1, 2022, Plaintiff Charles, Jr., and Defendant Lucas cohabited within the Boer-Bennink Hall located at 3255 Knight Way, SE, Grand Rapids, Michigan 49546-4408, on Defendant Calvin University's campus at the direction of Defendant Calvin University and Ready for Life.

270.   At all relevant times, Calvin University owned and maintained control over the Boer-Bennink Hall where Charles, Jr., was assigned residence.

271.   At all relevant times, Ready for Life maintained control over the Boer-Bennink Hall where Charles, Jr., was assigned residence.

272.   At all relevant times, Calvin University owned and maintained control over Boer-Bennink Hall, the residence Charles, Jr., and Lucas were assigned to cohabit while attending Calving University and Ready for Life.

273.   Calvin University and Ready for Life owed Charles, Jr., duties, including but not limited to a duty to use reasonable care to keep Boer-Bennink Hall and the surrounding premises reasonably safe and to provide security to Charles, Jr., from any foreseeable dangers.

274.   In the context of use in premises liability claims, "a landowner's duty to a visitor depends on that visitor's status."   Stitt, 462 Mich. at 597.

275.   "Historically, Michigan has recognized three common-law categories for

persons who enter upon the land or premises of another (1) trespasser, (2) licensee, or (3) invitee." *Id*. at 596.

276.   An "invitee" is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding, that reasonable care has been used to prepare the premises and make [it] safe for the [the invitee's] reception." *Id.* at 596-597.

277.   With "invitee" status commonly being given to people entering the property of another for business purposes, the owner of the property then shares a special relationship with said people that then creates "an affirmative duty to protect."   Williams v. Cunningham Drug Stores, Inc, 429 Mich. 495, 499; 418 N.W.2d 381 (1988).

278.   Charles, Jr., as an invitee who had a special relationship with Calvin University and Ready for Life, was entitled to the highest level of protection under Michigan's premises liability law wherein Calvin University and Ready for Life owed him the duty to "exercise reasonable care to protect [him] from an unreasonable risk of harm caused by a dangerous condition of the land." Bertrand v. Alan Ford, Inc, 449 Mich. 606, 609; 537 N.W.2d 185 (1995).

279.   Calvin University and Ready for Life owed Charles, Jr., a duty to exercise reasonable care to protect him from Lucas, whose presence at Calvin University and Ready for Life, and in particular, in the dorm room assigned to Charles, Jr., and Lucas,

was a dangerous condition of the land, especially after Charles, Jr.'s disclosure of the sexual assaults, battery, harassment, and violence.

280.    The court held in Mason v. Royal Dequindre, Inc, 455 Mich. 391, 393; 566 N.W.2d 199 (1997) that a landowner could be liable for failing to exercise reasonable measures to protect a business invitee from harm caused by criminal acts of a third party if the harm was foreseeable to an identifiable invitee and preventable by the exercise of reasonable care.

281.    Calvin University and Ready for Life were not only landowners, but landlords of the Boer-Bennink Hall, the dorm where Charles, Jr., and Lucas were assigned to cohabit.

282.    As landlords, Calvin University and Ready for Life had more control of their relationship with Charles, Jr., and Lucas, their tenants, and is liable for the unreasonable risk of harm caused by Lucas as a dangerous third party.  Samson v. Saginaw Prof'l. Bldg., Inc., 393 Mich. 393, 224 N.W.2d 843 (1975).

283.    Calvin University and Ready for Life were on notice that Charles, Jr., was in danger subsequent to his notifying them of the sexual assault, battery, harassment, and violence by Lucas, therefore Calvin University and Ready for Life and did not take reasonable steps to prevent Charles, Jr.'s injuries.

284.    The risks of sexual assault, battery, harassment, and violence was known and foreseeable on a college campus and is exemplified by the several occurrences on

Calvin University and Ready for Life's premises.

285.   Calvin University and Ready for Life owed Charles, Jr., a duty to provide an environment safe to reside, sleep, study, and focus on his academic endeavors.

286.   Calvin University and Ready for Life had a duty to monitor and provide security to the campus, which includes Boer-Bennink Hall, and Charles, Jr., as an invitee.

287.   As a direct and proximate result of Calvin University and Ready for Life's failure to take reasonable measures to protect Charles, Jr., from an unreasonable risk of harm and a dangerous condition on its campus, to take appropriate reasonable measures, and/or give warning of the risk of harm and dangerous condition, Charles, Jr., suffered, and continues to suffer, injuries for which he is entitled to be compensated, including, but not limited to:

     a. Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

     b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c. A marred educational record, impaired educational capacity, and future earning capacity;

     d. Attorneys' fees and costs; and

     e. Such other and further relief this Honorable Court deems just and proper.

## COUNTY XIII – NEGLIGENCE & SPECIAL CIRCUMSTANCES/LOCO PARENTIS – CALVIN UNIVERSITY AND READY FOR LIFE

288.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through Two Hundred and Eighty-Seven into this Count as if they were set forth at length herein.

289.    Under Michigan law, "[t]he requisite elements of a negligence claim of action are that the defendant owed a legal duty to the plaintiff, that the defendant breached or violated the legal duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered." Schultz v. Consumers Power Co, 443 Mich. 445 (1993).

290.    Calvin University and Ready for Life had a duty to investigate the claims of sexual abuse, battery, harassment, and violence against Charles, Jr., by Lucas after they were brought to their attention.

291.    Charles, Jr., stated that he was the victim of sexual abuse, battery, harassment, and violence while he was a student at Calvin University and Ready for Life in the dorm assigned by same and the dorm mate of Lucas, another student.

292.    The student-on-student sexual abuse, battery, harassment, and violence occurred on Calvin University and Ready for Life's premises and continued despite Charles, Jr., notifying Calvin University, Ready for Life, Sobczynski, Falk, Perton, and their administrators, employees, staff, agents, representatives, and teachers.

293.    Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and their administrators, employees, staff, agents, representatives, and teachers knew or should have known that the sexual abuse, battery, harassment, and violence started and

progressed while Lucas was on their premises and knew or should have known that they had the authority and duty to supervise and control Lucas' behavior.

294.   Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and their administrators, employees, staff, agents, representatives, and teachers knew or should have known that allowing Lucas to remain as Charles, Jr.'s dorm mate that the sexual abuse, battery, harassment, and violence would continue while on their premises and result in damages to Charles, Jr.

295.   Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and their administrators, employees, staff, agents, representatives, and teachers knew of and/or should have known that permitting Lucas to remain in control and possession of the dorm key after being notified of the sexual abuse, battery, harassment, and violence would result in the prolongation of same against Charles, Jr., and the damages suffered by Charles, Jr.

296.   Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and their administrators, employees, staff, agents, representatives, and teachers knew or should have known that their affirmative misrepresentation of the nature of the sexual assault, battery, harassment, and violence would result in the damages suffered by Charles, Jr.

297.   Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and their administrators, employees, staff, agents, representatives, and teachers knew or

should have known that their failure to report the sexual abuse, battery, harassment, and violence to Donna Dotson and Charles Dotson, Sr., would result in the damages suffered by Charles, Jr.

298.    Calvin University, Ready for Life, Sobczynski, Falk, Perton, Horras, and their administrators, employees, staff, agents, representatives, and teachers knew or should have known that their failure to report the sexual abuse, battery, harassment, and violence to the local police department would result in the damages suffered by Charles, Jr.

299.    Calvin University and Ready for Life assumed the affirmative duty to supervise Charles, Jr., and Lucas to prevent them from engaging in prohibited activities, i.e. sexual assault, battery, harassment, and violence against one another.

300.    A special relationship, or *loco parentis,* existed between Calvin University, Ready for Life and Charles, Jr., and Lucas during the time of the sexual assaults, battery, harassment, and violence.

301.    Charles, Jr., and Lucas both have Down Syndrome, an intellectual disability that requires special and heightened care and supervision.

302.    The Court in <u>Sierocki v. Hieber</u>, 168 Mich. App. 429, 434; 425 N.W.2d 477 (1988) stated that in determining whether a "special relationship or circumstance", and thus a legal duty to act, the court must balance the societal interests involved, the severity of the risk, the burden placed upon the defendant, the likelihood of the

occurrence, and the relationship between the parties.

303.    Calvin University and Ready for Life fully understood the heightened duties and responsibilities associated with having a special education program directly related to its students with Down Syndrome and, in particular, to Charles, Jr., and Lucas.

304.    Calvin University and Ready for Life were in the unique position of understanding the heightened duties and responsibilities owed to Charles, Jr., owing to the fact that he, as well as Lucas, underwent an evaluation and assessment of their functional capacities, by and through Calvin University and Ready for Life, to ensure that they were proper candidates for their program.

305.    Calvin University and Ready for Life knew that Charles, Jr., was not able to function independently or protect himself from dangers, was vulnerable due to his difficulty in advocating for himself and was prone to the severity of risks of harm.

306.    Charles, Jr.'s vulnerability and intellectual disabilities left him with no option but to completely rely upon Calvin University and Ready for Life to provide him with security and safety while enrolled in their program that was designed specifically for individuals with same.

307.    As a direct and proximate result of Calvin University and Ready for Life's negligence Charles, Jr., suffers, and continues to suffer, injuries for which he is entitled to be compensated, including, but not limited to:

    a.  Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment; Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    b.  A marred educational record, impaired educational capacity, and future earning capacity;

    c.  Attorneys' fees and costs; and

    d.  Such other and further relief this Honorable Court deems just and proper.

## COUNT XIV – AMERICANS WITH DISABILITIES ACT OF 1990 (ADA); 42 U.S.C. §12101 – CALVIN UNIVERSITY AND READY FOR LIFE

308.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through Three Hundred and Seven into this Count as if they were set forth at length herein.

309.    Pursuant to 42 U.S.C. § 12132 "…no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

310.    "[T]o state a claim under the ADA or §504, a plaintiff must show that she is (1) disabled under the statute; (2) "otherwise qualified" for participation in the program, and (3) being excluded from participation of in, denied the benefits of, or subjected to discrimination under the program by reason of her disability." Doe v. Jackson Madison Cty. Bd. of Educ., 2018 U.S. Dist. LEXIS 95649.

311.    At all relevant times, Charles Jr.'s disability was known to Calvin University and Ready for Life.

312.    Calvin University and Ready for Life's knowledge or Charles, Jr.'s disability is evidenced by the fact that he was enrolled into their Ready for Life Academy, "an inclusive college experience for adults with intellectual disabilities" per Calvin University's website.

313.    Calvin University and Ready for Life did not take action consistent with past practices in relation to the multiple assaults that Charles, Jr., suffered.

314.    Calvin University and Ready for Life did not make reasonable accommodations to Charles, Jr., following his reports of sexual assaults, battery, harassment, and violence as required under Title II of the ADA and the Rehabilitation Act, inconsistent with Calvin University and Ready for Life's past practice with students within their educational program.

315.    Upon learning of the sexual assaults, battery, harassment, and violence, Calvin University and Ready for Life did not take actions consistent with what they otherwise would have afforded other students, despite their clear knowledge of Charles Jr.'s disability.

316.    Charles Jr.'s disability makes it exceedingly difficult for him to self-advocate.

317.    Calvin University, Ready for Life, and their employees, administrators, agents, and staff, i.e. Sobczynski, Falk Perton, and Horras knew that Charles, Jr.'s disability made it extremely difficult for him to self-advocate.

318.    Calvin University and Ready for Life took advantage of Charles Jr.'s difficulties in self-advocating with its active failure to execute remedial measures, investigate the sexual assaults, battery, harassment, and violence, as well as its inability to provide reasonable accommodations to Charles, Jr., in accordance with his disability, *i.e.* assisting him in contacting the police and/or filing a police report.

319.    Charles, Jr., is not required to show a total exclusion from the services, programs or benefits of Calvin University and Ready for Life to prevail.  Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000)

320.    It is enough to show "constructive exclusion," *i.e.,* an unreasonable level of difficulty in accessing the benefits.  Frame v. City of Arlington, 616 F.3d 476, 484 (5th Cir. 2010); "Effective denial…requires courts to consider all the circumstances, including the degree of hardship on the Plaintiff and the reasonableness of the modification given its costs and the availability of substitute services." *Id.,* n. 8.

321.    Pursuant to 28 C.F.R. §35.130(b)(1)(iv), 28 C.F.R §35.130(b)(8), and 28 §35.130(c) discrimination against a class of disabilities or based on the severity of a disability is prohibited.

322.    Charles, Jr., was excluded from participation in and/or denied the benefits of services, programs, or activities because of Calvin University and Ready for Life's actions and/or voluntary inactions.

323.    Based upon his disability and/or severity of his disability, Charles Jr., was subjected to harassment, battery, violence, and sexual assaults that ~~was~~ were pervasive, objectively offensive, and resulted in discrimination under Title II of the Americans with Disabilities Act.

324.    The severity of the offensive conduct altered the educational environment, depriving Charles, Jr., of access to a safe and effective educational environment.

325.    The severity of the offensive conduct deprived Charles, Jr., of the right and assistance to file a properly executed Clery Report, contact the police, and/or file a police report.

326.    As a direct and proximate result of Calvin University and Ready for Life's violation of the Americans with Disabilities Act of 1990 (ADA); 42 U.S.C. §12101, Charles, Jr., continues to suffer, injuries for which he is entitled to be compensated, including, but not limited to:

      a. Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

      b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. A marred educational record, impaired educational capacity, and future earning capacity;

d. Attorneys' fees and costs; and

e. Such other and further relief this Honorable Court deems just and proper.

## COUNT XV– REHABILITATION ACT §504 – CALVIN UNIVERSITY AND READY FOR LIFE

327.    Plaintiff repeats, incorporates, and re-alleges paragraphs One through Three Hundred and Twenty-Six in this Count as if they were set forth at length herein.

328.    At all relevant times, Charles Jr.'s disability was known to Calvin University and Ready for Life.

329.    Calvin University and Ready for Life's knowledge of Charles, Jr.'s disability is evidenced by the fact that he was enrolled in their Ready for Life Academy, "an inclusive college experience for adults with intellectual disabilities," per Calvin University's website.

330.    Calvin University and Ready for Life did not take action consistent with past practices in relation to the multiple assaults that Charles, Jr., suffered.

331.    Calvin University and Ready for Life did not make reasonable accommodations to Charles, Jr., following his reports of sexual assaults, battery, harassment, and violence as required under Title II of the ADA and the

Rehabilitation Act, inconsistent with Calvin University and Ready for Life's past practice with students within their educational program.

332.    Upon learning of the assaults, Calvin University and Ready for Life did not take actions consistent with what they otherwise would have taken, despite its full knowledge of Charles Jr.'s disability.

333.    Charles Jr.'s disability makes it exceedingly difficult for him to self-advocate.

334.    Calvin University, Ready for Life, and its employees, administrators, agents, and staff, i.e. Sobczynski, Falk Perton, and Horras, knew that Charles, Jr.'s disability made it extremely difficult for him to self-advocate.

335.    Calvin University and Ready for Life took advantage of Charles Jr.'s difficulties in self-advocating with its active failure to execute remedial measures, investigate the sexual assaults, battery, harassment, and violence, as well as its inability to provide reasonable accommodations to Charles, Jr., in accordance with his disability.

336.    Calvin University, Ready for Life, and its employees, administrators, agents, and staff, i.e. Sobczynski, Falk Perton, and Horras, knew that Charles, Jr.'s disability made it extremely difficult for him to self-advocate.

337.    Calvin University and Ready for Life took advantage of Charles Jr.'s difficulties in self-advocating with its active failure to execute remedial measures,

investigate the sexual assaults, battery, harassment, and violence, as well as its inability to provide reasonable accommodations to Charles, Jr., in accordance with his disability.

338.   Charles, Jr., was excluded from participation in and/or denied the benefits of services, programs, or activities because of Calvin University and Ready for Life's actions and/or voluntary inactions.

339.   Based upon his disability and/or severity of his disability, Charles Jr., was subjected to harassment, battery, violence, and sexual assaults that were pervasive, objectively offensive, and resulted in discrimination under §504 of the Rehabilitation Act.

340.   The severity of the offensive conduct altered the educational environment, depriving Charles, Jr., of access to a safe and effective educational environment.

341.   The severity of the offensive conduct deprived Charles, Jr., of the right and assistance to file a properly executed Clery Report, contact the police, and/or file a police report.

342.   Calvin University and Ready for Life did not disclose or ensure full disclosure of the facts involving the sexual assaults, harassment, battery and violence to Charles, Jr.'s parents, or to execute a proper Clery Report, thus precluding a proper investigation.

343.    Calvin University and Ready for Life, through its employees, admitted that no employee of Calvin University or Ready for Life offered Charles, Jr., help with filing a Police Report or contacting the Grand Rapids Police Department to do so.

344.    Calvin University and Ready for Life failed to facilitate the investigation and collection of physical evidence of the sexual assaults, battery, harassment, and violence, ability to contact the Grand Rapids Police Department relative to same, or even provide Charles, Jr.'s parents with a timeline of events.

345.    As a direct and proximate result of Calvin University and Ready for Life's violation of §504 of the Rehabilitation Act, Charles, Jr., suffered, and continues to suffer, injuries for which he is entitled to be compensated, including, but not limited to:

     a.  Past, present, and future physical and psychological pain, emotional distress, mental disturbance, fright, revulsion, humiliation, pain a suffering, and impairment;

     b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c.  A marred educational record, impaired educational capacity, and future earning capacity;

     d.  Attorneys' fees and costs; and

     e.  Such other and further relief this Honorable Court deems just and proper.

## **RELIEF REQUESTED**

For all the foregoing reasons Charles, Jr., demands judgment against the Defendants and respectfully requests that this Honorable Court enter Judgment for him and against the Defendants:

1.  In an amount that fairly and reasonably compensates him for his injuries, damages and losses, including but not limited to, economic damages, non-economic damages, physical injury, that he is found to be entitled;

2. Exemplary and/or punitive damages from Defendants in whatever amount Charles, Jr. is found to be entitled;

3. Consequential damages from Defendants in whatever amount Charles, Jr. is found to be entitled;

4. Trial by Jury on all issues so triable;

5. An award of expert witness fees, statutory interest from the date of this cause of action, or otherwise permitted under Federal and Michigan law, for such other and further relief, and this Honorable Court deems just and proper.

Respectfully submitted,

ATNIP & ASSOCIATES, PLLC

Dated: October 23, 2024                    /s/ Anna E. Wright
                                           Anna E. Wright (P72611)
                                           Attorney for Plaintiff
                                           400 Water Street, Ste. 205
                                           Rochester, Michigan 48307
                                           (248) 599-1607
                                           anna@atniplawyers.com


Respectfully submitted,

HEIDI A. TANNER ATTORNEY
AT LAW, PLLC

Dated: October 23, 2024                    /s/ Heidi A. Tanner
                                           Heidi A. Tanner (P61953)
                                           Of Counsel for Plaintiff
                                           4701 Charing Ct.
                                           Castle Rock, CO 80109
                                           (248) 672-5478
                                           attyheiditanner@gmail.com